Glen K. SANDLIN, Plaintiff–Appellant,

v.

CORPORATE INTERIORS INC.; Svein Reichborn–Kjennerud; Sandra K. Reichborn–Kjennerud; 2601 Blake Street; Colorado National Bank of Denver, N.A.; Interior Services, Inc., Defendants–Appellees.

Glen K. Sandlin, Plaintiff–Appellant,

v.

Corporate Interiors Inc., Defendant–Appellee.

Nos. 91–1001, 91–1003.

United States Court of Appeals, Tenth Circuit.

Aug. 18, 1992.

---

David L. Smith, Denver, Colo., for plaintiff-appellant.

Kenneth S. Kramer (Isaac H. Kaiser, also of Berenbaum & Weinshienk, Denver, Colo., James W. Hubbell and Christine L. Murphy of Kelly/Haglund/Garnsey & Kahn, Denver, Colo., with him on the briefs), for defendants-appellees.

Before LOGAN and MOORE, Circuit Judges, and ALLEY, District Judge.*

LOGAN, Circuit Judge.

In these related appeals we consider a federal district court's postjudgment ancillary jurisdiction to adjudicate claims against newly added nondiverse parties whose prejudgment actions allegedly caused the insolvency of a judgment debtor.

I

Plaintiff Glen K. Sandlin brought suit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, against defendant Corporate Interiors Inc. and obtained a $142,226 judgment. Shortly thereafter, plaintiff made a motion to alter or amend the judgment to require reinstatement to his former job or to order front pay in lieu of reinstatement. Plaintiff's motion was denied.[1]

After unsuccessfully trying to enforce his judgment against Corporate Interiors, plaintiff sought recovery through postjudgment proceedings pursuant to Fed. R.Civ.P. 69(a) not only from the judgment debtor, Corporate Interiors, but also third parties Svein Reichborn–Kjennerud, Sandra Reichborn–Kjennerud, 2601 Blake Street (a general partnership), Colorado National Bank of Denver, and Interior Services, Inc. Plaintiff was permitted to conduct extensive discovery, and a magistrate held four days of hearings.

During or after the discovery in the Rule 69 proceedings, plaintiff filed a new complaint in federal district court against the same third parties, demanding a jury trial, alleging state law claims—conspiracy to defraud creditors, fraudulent conveyances, equitable subordination of secured creditor's rights, unauthorized conversion of corporate assets, and the tort of outrageous conduct. That complaint also al-

leged that some of the defendants were the judgment debtor's alter ego and that defendant Interior Services, Inc. was Corporate Interior's successor corporation. All of these parties are Colorado residents, so there is no diversity jurisdiction; plaintiff predicated the jurisdiction upon the district court's "continuing jurisdiction in Civil Action No. 89–M–727 [the ADEA suit]." Appendix to Opening Brief for Plaintiff–Appellant (No. 91–1001) at 1.

The district court granted defendants' motion to dismiss the new complaint for lack of subject matter jurisdiction. It also withdrew its order of reference of the Rule 69 summary proceedings to the magistrate judge. It ruled against plaintiff on his motion to amend the ADEA judgment to give him reinstatement or front pay and limited further proceedings under Fed. R.Civ.P. 69 to include only allegations of improper *postjudgment* conduct relating to assets of the judgment debtor. Plaintiff appeals these rulings.

II

■ First we consider whether the district court abused its discretion in denying plaintiff's motion to alter or amend the judgment to order reinstatement or front pay. *See Wulf v. City of Wichita,* 883 F.2d 842, 873 (10th Cir.1989) (upholding award of front pay under abuse of discretion standard); *Denison v. Swaco Geolograph Co.,* 941 F.2d 1416, 1426–27 (10th Cir.1991) (front pay is an issue for district court's equitable discretion).

■ Reinstatement, or front pay when reinstatement is not practical, may be awarded under the ADEA in appropriate circumstances. *EEOC v. Prudential Fed. Sav. & Loan Ass'n,* 763 F.2d 1166, 1172–73 (10th Cir.), *cert. denied,* 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). The district court, in denying reinstatement or front pay, stated: "What is clear from the

---

* The Honorable Wayne E. Alley, United States District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

1. We heard oral argument in No. 91–1003. We decided unanimously, after examining the briefs

and appellate record, that oral argument in No. 91–1001 would not materially assist the determination of the appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. Therefore we ordered No. 91–1001 submitted without oral argument.

trial testimony is that Corporate Interiors, Inc. ceased doing business at the beginning of 1990. Accordingly, it is also clear that reinstatement is not feasible and that the plaintiff is not entitled to front pay because his employer ceased doing business." Appendix to Opening Brief for Plaintiff–Appellant (No. 91–1003) at 39. Plaintiff did not dispute the court's finding that Corporate Interiors had ceased doing business, but instead argued that whether defendant had ceased doing business was irrelevant.

We agree with the district court that reinstatement is not possible and front pay is inappropriate if a defendant company has ceased doing business. The purpose of the equitable remedies under the ADEA is to make a plaintiff whole—to put the plaintiff, as nearly as possible, into the position he or she would have been in absent the discriminatory conduct. *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1097 (8th Cir.1982); *see also Prudential Fed.*, 763 F.2d at 1173 (under proper circumstances front pay "furthers the remedial purposes of the ADEA by assuring that the aggrieved party is returned as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct"). Thus, any award of front pay is limited by the estimated remaining tenure plaintiff would have enjoyed with his company absent the discriminatory conduct. When the defendant company has ceased to do business before judgment, plaintiff necessarily would have been discharged with the rest of the work force; thus, reinstatement was impossible and front pay inappropriate. *See Gibson*, 695 F.2d at 1097 ("aggrieved persons are not entitled to recover

damages for the period beyond which they would have been terminated for a nondiscriminatory reason"). We affirm the district court's denial of the motion to alter or amend the judgment.

### III

#### A

The district court dismissed the separate complaint and limited the Rule 69(a) proceedings because it believed it lacked subject matter jurisdiction to consider plaintiff's claims. That determination involves a question of law and is reviewed de novo. *City of Chanute, Kansas v. Williams Natural Gas Co.*, 955 F.2d 641, 658 (10th Cir. 1992).

The focus of these appeals is the scope of a federal court's ancillary jurisdiction,[2] in aid of its judgment and not merely the scope of Fed.R.Civ.P. 69.[3] Rule 69 creates a procedural mechanism for exercising postjudgment enforcement when ancillary jurisdiction exists, *see Argento v. Village of Melrose Park*, 838 F.2d 1483, 1487 (7th Cir.1988), but cannot extend the scope of that jurisdiction. *See* Fed.R.Civ.P. 82; *Blackburn Truck Lines Inc. v. Francis*, 723 F.2d 730, 732 (9th Cir.1984); *see also Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370, 98 S.Ct. 2396, 2400, 57 L.Ed.2d 274 (1978) ("it is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction").

Ancillary jurisdiction is an "ill-defined concept," 6 Charles A. Wright et al., *Federal Practice & Procedure* § 1444, at 316 (2d ed. 1990), that permits jurisdiction

---

**2.** Ancillary jurisdiction is also referred to under the more general term "supplemental jurisdiction." *See, e.g.*, Rex E. Lee & Richard G. Wilkins, *An Analysis of Supplemental Jurisdiction and Abstention with Recommendations for Legislative Action*, 1990 B.Y.U.L.Rev. 321, 323; *see also* 28 U.S.C. § 1367 (entitled "Supplemental jurisdiction"). Courts sometimes refer to "pendent and ancillary jurisdiction." Pendent jurisdiction is, at a minimum, closely related to ancillary jurisdiction and arguably is a type of ancillary jurisdiction. *See* Richard D. Freer, *A Principled Statutory Approach to Supplemental Jurisdiction*, 1987 Duke L.J. 34, 34 & n. 1 ("A considerable body of recent literature suggests

that there is no meaningful distinction between pendent and ancillary jurisdiction."); Erwin Chemerinsky, *Federal Jurisdiction* § 5.4.1, at 276 (1989) ("*Pendent jurisdiction* is one specific type of ancillary jurisdiction."). We will use the term "ancillary jurisdiction."

**3.** Because the ADEA case was commenced before December 1, 1990, we do not consider what impact 28 U.S.C. § 1367 dealing with supplementary jurisdiction might have on the issues before us. *See* Judicial Improvements Act of 1990, § 310(c), Pub.L. No. 101–650, 104 Stat. 5089, 5114.

over certain cross-claims, counter-claims and third-party claims that are related to the principal case but do not enjoy a separate basis for subject matter jurisdiction. Ancillary jurisdiction is

> based on the premise that a district court acquires jurisdiction over a case or controversy in its entirety and, as an incident to the disposition of a dispute that is properly before it, may exercise jurisdiction to decide other matters raised by the case over which it would not have jurisdiction were they independently presented.

*Id.* at 316–17.

■ Within a federal court's ancillary jurisdiction is the power to conduct proceedings necessary to protect and give effect to its judgments.[4] *See, e.g., Finley v. United States,* 490 U.S. 545, 551, 109 S.Ct. 2003, 2007, 104 L.Ed.2d 593 (1989); 7 James Wm. Moore et al., *Federal Practice* ¶ 69.03[2], at 69–14 (2d ed. 1991). "That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled," *Local Loan Co. v. Hunt,* 292 U.S. 234, 239, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934); otherwise, "[t]he judicial power would be incomplete, and entirely inadequate to the purposes for which it was intended," *Bank of the United States v. Halstead,* 23 U.S. (10 Wheat.) 51, 53, 6 L.Ed. 264 (1825). Our problem is to determine the scope of this type of ancillary jurisdiction sufficiently to resolve the instant appeals.

### B

Garnishment actions against a third party holding property of a judgment debtor have always been held to be within the ancillary "enforcement" jurisdiction of the federal court, at least if the garnishee admits the debt. *E.g., Skevofilax v. Quigley,* 810 F.2d 378, 384–85 (3d Cir.) (en banc),

*cert. denied,* 481 U.S. 1029, 107 S.Ct. 1956, 95 L.Ed.2d 528 (1987); *id.* at 390–91 (Stapleton, J., dissenting); *Manway Constr. Co. v. Housing Auth. of Hartford,* 711 F.2d 501, 504 & n. 2 (2d Cir.1983); *see also Sheet Metal Workers Health & Welfare Trust v. Big D Service Co.,* 876 F.2d 852 (10th Cir.1989). *But see Berry v. McLemore,* 795 F.2d 452, 455 (5th Cir.1986) (declaring a writ of garnishment against strangers to court's judgment an action separate and independent of that resulting in judgment debt). The courts are not in total agreement, however, when the proceeding involves an alleged indemnity agreement between the judgment debtor and an employer or insurer. *Compare Argento,* 838 F.2d at 1488 *and Skevofilax,* 810 F.2d at 384 *with Berry,* 795 F.2d at 455–56.

■ Apart from garnishments and agreements to indemnify, the cases are largely consistent. When a party asserts a postjudgment claim against a nonparty not arising out of the operative facts that produced the original judgment, an independent basis for federal jurisdiction must exist. *E.g., Berry,* 795 F.2d at 455 ("We can find no case where a court held that it had ancillary jurisdiction to consider claims in a *new and independent action* merely because the second action sought to satisfy or give additional meaning to an earlier judgment."); *Manway Constr.,* 711 F.2d at 504 (garnishee bank's conduct in not "rolling over" certificate of deposit raises questions unrelated to the court's judgment requiring separate basis for federal court jurisdiction); *Eagerton v. Valuations, Inc.,* 698 F.2d 1115, 1119 (11th Cir.1983) (contract dispute with appraisal company not within jurisdiction of court handling suit dealing with constitutionality of appraisal disparities in state ad valorem taxing scheme; suit does not arise out of same aggregate of operative facts, nor does core of facts supporting original claim activate legal rights); *Warren G. Kleban Eng'g Corp. v.*

---

4. One commentator, arguing that this type of ancillary jurisdiction is analytically distinct from what is typically termed ancillary jurisdiction, has designated it "enforcement jurisdic-

tion." *See* Susan M. Glenn, Note, *Federal Supplemental Enforcement Jurisdiction,* 42 S.C.L.Rev. 469, 472 & n. 15 (1991).

*Caldwell,* 490 F.2d 800, 802 (5th Cir.1974) (court authority over desegregation order does not support jurisdiction in dispute by subcontractors relating to construction of two school buildings).

A typically cryptic Justice Holmes opinion for the Supreme Court, *H.C. Cook Co. v. Beecher,* 217 U.S. 497, 30 S.Ct. 601, 54 L.Ed. 855 (1910), supports this view. There a judgment creditor of a corporation, unable to collect against the corporation, sued its directors in an attempt to make them answerable for the judgment "already obtained," *id.* at 498, 30 S.Ct. at 602. The Supreme Court opinion stated "it would seem from [the judge's] opinion that one of the grounds of jurisdiction urged before him was that this is an action ancillary to the judgment in the former suit, which, of course, it is not." *Id.* at 498–99, 30 S.Ct. at 602. The court held that "if the directors are under obligations by Connecticut law to pay a judgment against their corporation, that is not a matter that can be litigated between citizens of the same state, in the [federal courts]." *Id.* at 499, 30 S.Ct. at 602. *Beecher* has been criticized as dated and for its lack of exposition.[5] We read *Beecher* as saying that when postjudgment proceedings seek to hold nonparties liable for a judgment on a theory that requires proof on facts and theories significantly different from those underlying the judgment, an independent basis for federal jurisdiction must exist. So read, the opinion seems both consistent with most modern court decisions and controlling upon us.

█ Applying these principles we hold that the district court properly dismissed all of plaintiff's claims against the third party defendants—Svein and Sandra Reichborn–Kjennerud, 2601 Blake Street, Colorado National Bank of Denver, and Interior Services, Inc.—that involved their activities before the judgment was entered on the ADEA claim against Corporate Interiors. These claims do not arise out of the same operative facts proved in securing the

ADEA judgment; they involve different legal theories; they are not against parties who were brought into the original ADEA action; they are not traditional garnishment or indemnity agreement claims. The district court would have to conduct a whole new trial or trials between nondiverse parties on state law causes of action either as a derivative suit on behalf of the defunct Corporate Interiors or as a tort claim on behalf of plaintiff, with recovery not necessarily measured by the amount of the ADEA judgment.

The cause of action based upon the alter ego theory is a closer case, because in theory the court is merely trying to identify the true debtor on the judgment. *Blackburn Truck Lines,* 723 F.2d at 732–33, suggests that pursuing sole owners of a judgment debtor corporation on an alter ego theory is within the court's ancillary jurisdiction. That Ninth Circuit case noted that federal jurisdiction would have existed had the new defendants been joined in the original suit, and it relied upon our decision in *Christiansen v. Mechanical Contractors Bid Depository,* 404 F.2d 324 (10th Cir.1968). *Christiansen* was in reality a successor corporation case, which affirmed a district court's rejection of successor liability. We said that

> [i]n order for us to find a property transfer, we would have to determine that the plan of operation of the predecessor corporation was in some way a property right and that the executive manager transferred this property right, via his change in employment to the successor corporation. The manager, whose employment terminated when appellant levied on all the property of Bid Depository, was free to accept employment with anyone, and it cannot be said that by doing so he transferred a property right to his new employer.

*Id.* at 325.

Alter ego in its accurate sense involves sometimes complex factual findings of gross undercapitalization or of owners' failure to observe separate corporate exist-

---

5. *Skevofilax* in a footnote found *Beecher* "a typically delphic pronouncement" and suggested it was probably an application of a then-governing jurisdictional statute. 810 F.2d at 385 n. 4.

And in *Argento,* the Seventh Circuit dismissed *Beecher* as dated, conclusory and rarely cited as precedent. 838 F.2d at 1488.

ence. Without attempting to decide all future cases, when the alter ego contentions may be more intertwined with the merits of an underlying claim within the court's primary jurisdiction, we hold the district court properly dismissed the instant alter ego claims. The same distinctions recited above to justify dismissal of the other state-based claims apply here: significantly different factual proof, new parties, prejudgment actions. Additionally, the Supreme Court decision in *Beecher*, though dated, has not been overruled and seems directly in point: an attempt to hold directors liable for a corporate judgment "already obtained" is not within the ancillary jurisdiction of the court. *Beecher*, 217 U.S. at 498–99, 30 S.Ct. at 601–02.

Pursuing the new parties, particularly Interior Services, Inc., on a successor theory stands on a different basis, however. If viable, that would involve postjudgment transfers of Corporate Interior's property. *See Christiansen*, 404 F.2d at 325. Plaintiff's new complaint does not assert any postjudgment transfers, and so was properly dismissed by the district court. We understand the district court's ruling under Fed.R.Civ.P. 69(a) as not prohibiting further discovery of postjudgment activity. Therefore, successor liability on the part of Interior Services, Inc. or another of these parties is not foreclosed by the district court's judgment.

AFFIRMED.