RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0367P (6th Cir.)
File Name: 03a0367p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MARGO HUDSON,
    *Plaintiff-Appellant,*

    *v.*

    No. 01-1653

BRYAN COLEMAN; ERIC
RODGERS,
    *Defendants-Appellees,*

CITY OF FLINT,
    *Garnishee-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-71145—Denise Page Hood, District Judge.

Argued: December 12, 2002

Decided and Filed: October 14, 2003

Before: BATCHELDER and MOORE, Circuit Judges;
FORESTER, Chief District Judge.[*]

_____

[*] The Honorable Karl S. Forester, Chief United States District Judge
for the Eastern District of Kentucky, sitting by designation.

_____

## COUNSEL

**ARGUED:** David J. Nickola, NICKOLA & NICKOLA, Flint, Michigan, for Appellant. Patrick L. Rose, Lansing, Michigan, for Appellees. **ON BRIEF:** David J. Nickola, NICKOLA & NICKOLA, Flint, Michigan, for Appellant. Patrick L. Rose, Lansing, Michigan, for Appellees.

FORESTER, D. J., delivered the opinion of the court, in which BATCHELDER, J., joined. MOORE, J. (pp. 15-21), delivered a separate dissenting opinion.

_____

## OPINION

_____

FORESTER, District Judge. Plaintiff appeals the district court's order granting the City of Flint's ("City") motion to quash Plaintiff's garnishment action against the City. For the following reasons, we AFFIRM the judgment of the district court.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed an action in state court asserting state and federal causes of action against Officers Bryan Coleman, Eric Rodgers, and the City of Flint arising from the Officers' theft of Hudson's Cocker Spaniel, "Brandy." The City removed the action to the Eastern District of Michigan based on Plaintiff's 42 U.S.C. §§ 1983 and 1985 claims.

The facts giving rise to this dispute are undisputed and merit only a brief discussion  before turning to the determinative legal issue of subject matter jurisdiction. Hudson reported that her car had been stolen with her dog inside the car. Officers Coleman and Rodgers responded to a radio call to investigate Hudson's missing vehicle and dog.

The Officers located the stolen vehicle and proceeded to take the dog from the car and ultimately to Officer Coleman's house. The Officers then lied by reporting that they did not find a dog inside the car. The truth concerning the theft of the would-be "$300,000 Cocker Spaniel[1]" finally surfaced five months later during an internal police department investigation in which the Officers admitted to stealing the dog. The Cocker Spaniel was returned to Hudson and the Officers faced discipline by the Police Department.

After the district court granted the City's motion for summary judgment dismissing it from the case, Hudson and the Officers entered into a consent judgment whereby Coleman would pay $200,000 and Rodgers would pay $100,000 in settlement of Hudson's claims. In an effort to collect upon the consent judgment against Coleman and Rodgers, Hudson filed writs of garnishment against the City. Hudson asserted that the City would be liable to pay the consent judgment because of an indemnity agreement between the City and the Police Officers Union.

The indemnification agreement under which Hudson attempts to collect the consent judgment from the City provides:

> Whenever any claim is made or any civil action is commenced against an Employee for injuries to persons or property caused by negligence or other acts of the Employee while in the course of his employment, and while acting within the scope of his authority, the Employer will pay for or engage in or furnish the services of an Attorney to advise the Employee as to the

---

[1]Officers Coleman and Rodgers agreed to pay $300,000 to settle Plaintiff's claims arising from the Officers' theft of the dog. As will be discussed, the legal issue presented is whether the federal courts have jurisdiction to determine whether the City is liable for this debt in Plaintiff's garnishment action against the City.

claim and to appear for and represent the Employee in the action.

> The Employer may compromise, settle and pay such claim before or after the commencement of any civil action. Whenever any judgment for damages, excluding punitive damages, is awarded against an Employee as the result of any civil action for personal injuries or property damage caused by the Employee while in the course of his employment, and while acting within the scope of his authority, the Employer will indemnify the employee or will pay, settle, or compromise the judgment. The Chief Legal Officer will make the selection of the attorney or attorneys to represent the Employee in any particular case, and allow the Employee to object to the selection if he has cause to do so.

Pursuant to the above indemnity agreement, the City provided the Officers with legal counsel during the course of the proceedings. There is no evidence in the record indicating that the City's liability under the indemnification agreement has been established, or, more specifically, whether the Officers were acting within the scope of their employment and authority when they stole the dog. By the time Hudson instituted the garnishment proceeding against the City, the Officers each had paid $12,500 to Hudson in partial satisfaction of their debts.

The City filed a motion to quash the garnishment on the basis of several theories, including lack of subject matter jurisdiction. After the Magistrate Judge[2] filed a report and recommendation concluding that the court lacked jurisdiction, the district court adopted the report and recommendation and granted the City's motion to quash. Hudson timely filed a notice of appeal.

---

[2]We commend Magistrate Judge Paul J. Komives for a thorough and well-reasoned report and recommendation, much of which has been adopted in this opinion.

## II.  ANALYSIS

We review *de novo* a district court's determination of subject matter jurisdiction.  *See, e.g., Greater Detroit Resource Recovery Authority v. EPA*, 916 F.2d 317, 319 (6th Cir. 1990).  As an initial observation, it is well established that federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute, *see Willy v. Coastal Corp.*, 503 U.S. 131 (1992); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986), which is not to be expanded by judicial decree, *American Fire & Casualty Co. v. Finn*, 341 U.S. 6 (1951).  Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id* (citing *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11 (1799); *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-183 (1936)).

The district court found that it lacked jurisdiction over the garnishment, primarily because the action attempts to hold the City, a third party, liable for payment of a judgment on an independent legal theory, the indemnity agreement, which would require separate analysis and possible discovery concerning the City's defenses to liability.  As set forth above, the City was dismissed from the action on September 30, 1998.  The Officers then settled with the Plaintiff and a consent judgment was entered on February 29, 2000.  It was not until June 30, 2000, that the Plaintiff served writs of garnishment on the City relying upon Fed. R. Civ. P. 69.

The jurisdictional analysis in this garnishment action begins with a consideration of *Peacock v. Thomas*, 516 U.S. 349 (1996), and its discussion of ancillary subject matter jurisdiction.  As a starting point, it is necessary to understand that there are two situations in which a court may exercise ancillary jurisdiction over a claim otherwise not within the jurisdiction of the court: "'(1) to permit disposition by a single court of claims that are, in varying respects and

degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Peacock*, 516 U.S. at 354 (quoting *Kokkomen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379-80 (1994) (citations omitted)).  The first category of ancillary jurisdiction identified above has largely been codified in the supplemental jurisdiction statute, 28 U.S.C. § 1367.  The second category of ancillary jurisdiction is generally referred to as "ancillary enforcement jurisdiction."

In *Peacock*, the plaintiff obtained a federal court judgment against a corporation pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 832, as amended, 29 U.S.C. § 1001 *et seq*.  After efforts to collect on the judgment failed, the plaintiff filed a second suit seeking to hold Peacock, an officer and shareholder of the corporation, personally liable under a piercing of the corporate veil theory.  The Supreme Court determined that it was without an independent jurisdictional basis for the suit because ERISA does not authorize a veil-piercing action.  In addition, the Court rejected the plaintiff's argument that the federal courts had ancillary enforcement jurisdiction over the second suit.

The Court began its analysis by emphasizing that it has "reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments." *Peacock*, 516 U.S. at 356.  The Court further explained that, "[i]n defining that power, we have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments–including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *Id.* (citations omitted).

Nevertheless, *Peacock* concluded that it was without ancillary jurisdiction to entertain plaintiff's second suit. The Court cautioned that the recognition of ancillary

supplementary proceedings has not extended beyond attempts to execute, or guarantee the eventual executability of a federal judgment. More specifically, the Court has "never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357. The Court further explained that

[i]n determining the reach of the federal courts' ancillary jurisdiction, we have cautioned against the exercise of jurisdiction over proceedings that are "'entirely new and original,'" or where "the relief [sought is] of a different kind or on a different principle" than that of the prior decree.

*Id*. at 358 (citations omitted).

*Peacock* concluded that the federal courts were without ancillary enforcement jurisdiction because plaintiff's action was "founded not only upon different facts than the ERISA suit, but also upon entirely new theories of liability." *Id.*

Here, it is undisputed that Plaintiff's indemnity claim does not raise a federal question and that the parties are not diverse. Accordingly, the Court is without independent subject matter jurisdiction over the "writs of garnishment." *Peacock's* analysis controls regarding exercise of the first category of ancillary jurisdiction, *i.e.*, "ordinary" ancillary jurisdiction. According to *Peacock*:

The basis of the doctrine of ancillary jurisdiction is the practical need "to protect legal rights or effectively to resolve an entire, logically entwined lawsuit. [*Owen Equipment & Erection Co.* v.] *Kroger*, [437 U.S. 365, 377 (1978)]. But once judgment was entered in the original suit, the ability to resolve simultaneously factually intertwined issues vanished. As in *Kroger*, "neither the convenience of litigants nor considerations of judicial economy" can justify the extension of

ancillary jurisdiction over [plaintiff's] claims in this subsequent proceeding.

*Peacock*, 516 U.S. at 255.[3]

Just as in *Peacock*, there is no rationale to support exercising ancillary jurisdiction over Plaintiff's state law indemnity claim against the City. The indemnity claim was not asserted until after the City was dismissed and the case against the individual defendants was settled. Accordingly, there are no factually intertwined issues to resolve and neither the convenience of the litigants nor considerations of judicial economy justify the exercise of ancillary jurisdiction over Plaintiff's state law indemnity claim.

Turning to the purported ancillary "enforcement" grounds for jurisdiction, we find that a proper reading of *Peacock* dictates that the federal courts are without jurisdiction to entertain this garnishment action. The precise issue presented by the Plaintiff in actuality is whether the fact that the garnishment action is proceeding under the same case number as the original action, rather than in a second lawsuit, sufficiently distinguishes the case from *Peacock*.

*Peacock* explained that ancillary jurisdiction is inappropriate in two distinct proceedings, only one of which involves a subsequent lawsuit. First, the Court indicated that ancillary jurisdiction is inappropriate in "proceedings that are entirely new and original." *Peacock*, 516 U.S. at 358 (internal quotation and citation omitted). Assuming without

---

[3] The Plaintiff attempts to distinguish *Peacock* on the basis that it involved a separate suit and the case at bar involves writs of garnishment against the non-party City proceeding under the same case number as the original suit. This distinction has no bearing on "ordinary" ancillary jurisdiction analysis, as such jurisdiction is discretionary with the Court and contemplates proceedings under the same case number in any event. *See* 28 U.S.C. § 1367. The "separate suit" issue and its bearing on ancillary enforcement jurisdiction is discussed *infra* at pp. 7-13.

deciding that the garnishment action falls outside this first precept, the action is squarely prohibited by the second category identified in *Peacock* "where 'the relief [sought is] of a different kind or on a different principle' than that of the prior decree." *Id.* (quoting *Dugas v. American Surety Co.*, 300 U.S 414, 428 (1937)) (alteration in original).

Plaintiff's garnishment claim seeks to impose liability on the City, a third party not a party to the consent judgment, on the basis of the indemnity agreement, a legal theory entirely independent from that in the original action. As stated above, there is no evidence in the record indicating that the City's liability under the indemnification agreement has been established, or, more specifically, whether the Officers were acting within the scope of their employment or authority when they stole the dog. In fact, the City was not served with the writs of garnishment until one year and nine months after being dismissed from the lawsuit. At this stage, there has simply been no interpretation of the indemnity clause in the labor agreement between the City and the Police Officer's union. The City has not been adjudged liable to indemnify the Officers' settlement with the Plaintiff, in that there remain substantial questions regarding the interpretation of the labor agreement, *e.g.*, whether each Officer was acting "while in the course of his employment" and "within the scope of his authority." The interpretation of the indemnity provision presents unresolved issues such as whether each Officers' conduct giving rise to the suit constituted a frolic or a mere detour from duty.

In sum, the relief sought by the Plaintiff is based upon a vastly different principle than that of the prior consent decree. We find Hudson's reading of *Peacock* far too narrow and conclude that she has not carried her burden of demonstrating that this suit falls within either category of ancillary jurisdiction.

Hudson relies upon the statement in *Peacock* that "we have approved the exercise of ancillary jurisdiction over a broad

range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments–including attachment, mandamus, *garnishment*, and the prejudgment avoidance of fraudulent conveyances." *Peacock*, 516 U.S. at 356 (emphasis added) (citations omitted). The Supreme Court's acknowledgment of the fact that garnishment sometimes falls within ancillary jurisdiction is obviously not imprimatur for all garnishment actions arising from previous factually similar underlying federal claims to proceed in federal court.[4] The type of garnishment proceeding referred to in *Peacock* does not contemplate making the garnishee personally liable on the judgment based on some independent legal theory as Hudson seeks to do in this case. Instead, the typical garnishment proceeding referenced in *Peacock* contemplates the garnishee's paying the judgment creditor/garnishing party directly for funds, such as a salary, owed by the garnishee to the defendant in the underlying action. *Cf. Sandlin v. Corporate Interiors, Inc.*, 972 F.2d 1212, 1216-17 (10th Cir. 1992) (applying *H.C. Cook Co. v. Beecher*, 217 U.S. 497 (1910), a case with renewed vitality post-*Peacock*); *Merrell v. Miller*, No. 91-493-A, 1998 WL 329264, at *2 (E.D. Va. June 8, 1998) (noting that *Peacock* prohibits "efforts, unsupported by an independent basis for federal jurisdiction, to establish a new defendant's personal liability for an existing judgment.").

Michigan law apparently acknowledges the above distinction in the forms of garnishment by labeling the typical form of garnishment as "periodic" and the type garnishment sought by Hudson as "non-periodic." To be sure, Hudson is not requesting that any wages owed by the City to the Officers be paid by the City to Hudson. Instead, Hudson

---

[4]Likewise, Fed. R. Civ. P. 69(a), providing supplementary proceedings in aid of executing a judgment, does not purport to confer ancillary subject matter jurisdiction for *all* garnishment proceedings arising out of a common nucleus of fact to the original federal proceeding. Instead, *Peacock* explains the limits of federal ancillary jurisdiction.

seeks to hold the City individually liable under the indemnity clause for the full amount of the Officers' settlement. The state form used by Hudson is labeled "non-periodic" request and writ for garnishment and Hudson's attorney has mailed a letter to the City on July 10, 2000, indicating the belief that the City is responsible for payment of the entire judgment under the indemnity clause. As stated above, the type garnishment sought by Hudson contemplates making the third party City, a non-party to the consent judgment, personally liable on the consent judgment entered into by the Officers based on the independent legal theory of the indemnification agreement. The City's liability under the newly presented indemnity principle is far from established; thus, the issues to be litigated under the indemnity agreement deprive the Court of ancillary jurisdiction. *See Peacock*, 516 U.S. at 358; *see also, Travelers Indemnity Co. of Ill. v. Hash Management, Inc.*, 173 F.R.D. 150, 153 (M.D.N.C. 1997) ("However, if the proceedings are entirely new and original or seek relief different in kind, on a different principle, or to impose liability on persons not already bound by the previous action and judgment, the moving party must be able to assert an independent basis for federal jurisdiction over the controversy with the third party.").

Hudson also relies on *Yang v. City of Chicago*[5], 137 F.3d 522 (7th Cir. 1998), permitting ancillary jurisdiction under

---

[5]*Yang* relies on the previous Seventh Circuit decision of *Argento v. Village of Melrose Park*, 838 F.2d 1483 (7th Cir. 1988). The Supreme Court in *Peacock* implied that *Argento* and its progeny were on the wrong side of a circuit split. *See Peacock*, 516 U.S. at 532 n.2; *see also Yang*, 137 F.3d at 526. *Argento*, predating *Peacock*, permits ancillary jurisdiction "when the plaintiff is proceeding in his original suit rather than by means of a new suit." *Yang*, 137 F.3d at 526 (citations omitted). This jurisdictional analysis based upon "original suit" versus "new suit" labeling is irreconcilable with *Peacock's* more substantive analysis prohibiting jurisdiction "where 'the relief [sought is] of a different kind or on a different principle' than that of the prior decree." *Peacock*, 516 U.S. at 358 (quoting *Dugas v. American Surety Co.*, 300 U.S. 414, 428 (1937)) (alteration in original).

Fed. R. Civ. P. 69 for an indemnification action against the City of Chicago after the City was dismissed from the original lawsuit. *Yang* involved police officer defendants who, after responding to a break-in at Yang's store, proceeded to continue the looting started by the original thieves. After Yang objected to the officers' looting, the officers drove for two blocks with Yang hanging on to the car door. One officer eventually pulled his gun and punched Yang before fleeing the scene.

The *Yang* district court entered judgment against the officers and dismissed the action against the City. Yang then sought indemnification from the City on the basis of Illinois' indemnification statute, 745 ILCS 10/9-102, providing in pertinent part that a local public entity must pay any tort judgment against an employee "while acting within the scope of his employment." The district court dismissed the indemnification petition on the basis of the *Peacock* decision.

The Seventh Circuit held that the federal courts had jurisdiction over the indemnification petition because the petition was not a separate lawsuit and involved the same core of operative facts as the original action. According to *Yang*, "a Rule 69 garnishment proceeding to collect a judgment from a third person not party to the original suit is within a court's ancillary jurisdiction, providing the additional proceeding does not inject so many new issues that it is functionally a separate case." *Yang*, 137 F.3d at 526. (internal quotation omitted). *Yang* concluded that interpreting the scope of employment issue in order to resolve the indemnity question did not inject so many new issues into the action as to make it functionally a separate case. The Seventh Circuit then proceeded to resolve the scope of employment issue by concluding that under Illinois law the officer was acting within the scope of his employment when he pulled the gun on Yang. *Id.* at 525.

As an initial matter, *Yang* acknowledges that whether the garnishment arises by way of a separate action or under the

same case number as the original action is far from determinative of ancillary jurisdiction. Instead, *Yang* focuses on whether the garnishment injects sufficient new issues as to make the garnishment functionally separate, thus destroying ancillary jurisdiction. *Yang's* "functionally separate" subjective framework is fact-specific and can be interpreted as facially consistent with the Supreme Court's pronouncement that ancillary jurisdiction is inappropriate in "proceedings that are entirely new and original" and in proceedings "where 'the relief [sought is] of a different kind or on a different principle' than that of the prior decree." *Peacock*, 516 U.S. at 358 (internal quotation omitted) (quoting *Dugas v. American Surety Co.*, 300 U.S 414, 428 (1937)) (alteration in original).

We disagree with *Yang's* application of the "functionally separate" framework[6] in deciding the indemnification issue and hold that legitimate, unresolved disputes concerning whether conduct occurs within the scope of employment or authority deprives a federal court of ancillary jurisdiction in a garnishment action pursuant to *Peacock*. As stated, the City of Flint's liability under the newly presented indemnity principle is far from established; thus, the issues to be litigated under the indemnity agreement deprive the Court of

---

[6]We acknowledge that the *Peacock* framework for denying ancillary jurisdiction "where 'the relief [sought is] of a different kind or on a different principle' than that of the prior decree" permits a certain degree of subjectivity in decision making. Perhaps *Yang* can be explained on this basis in that the litigation resulted in a more than six year saga due in part to delays by the City, including multiple reviews by the Seventh Circuit. *Yang* involved a remand with directions that the case be reassigned to a different district judge due to inordinate delays. *See Yang*, 137 F.3d at 527. In addition, the Court expressed, "Yang has waited long enough for this lawsuit to come to an end." *Id*. at 527. We regret the inconvenience and delay that may be associated with a separate state court garnishment proceeding; however, as stated earlier, it is well-established that we must presume that a cause of action lies outside the limited federal jurisdiction when presented with a subjective choice or close call concerning the existence of jurisdiction.

ancillary jurisdiction. It is inappropriate for a Court to decide legitimate scope of employment and/or scope of authority questions without the benefit of fact-finding and briefing.

Our determination in this action overrules *Childress v. Williams*, 121 F. Supp.2d 1094 (E.D. Mich. 2000). *Childress* attempts to distinguish the disputed application of the indemnity agreement from *Peacock's* ambit by stating:

> *[I]f* all the prerequisites of the indemnification agreement were met, the City *would be* liable for indemnification at the time the judgment was rendered against the defendant Williams . . . . Because Defendant Williams *may* have a right to collect from the City, so too *may* plaintiff.

*Childress*, 121 F. Supp.2d at 1096 (emphasis added).

Instead, as we have set forth above, the very contingencies identified in *Childress* ("if," "would be," and "may") require sufficient fact-finding and legal analysis to distinguish the garnishment proceeding from the original action, rendering the federal courts without ancillary jurisdiction.

### III. CONCLUSION

Based upon the above, we AFFIRM the district court's order granting the City of Flint's motion to quash Plaintiff Hudson's garnishment action.

---

**DISSENT**

---

KAREN NELSON MOORE, Circuit Judge, dissenting. I respectfully dissent from the majority's conclusion that the district court lacks subject matter jurisdiction over Plaintiff-Appellant, Margo Hudson's ("Hudson"), garnishment action against Defendant-Appellee, the City of Flint ("City"). Contrary to the majority, I conclude that Hudson's garnishment action is merely a post-judgment proceeding following her prior § 1983 action against Defendants-Appellees, Bryan Coleman and Eric Rodgers (collectively "police officers"), and that the garnishment action will not inject so many new issues as to become a functionally separate lawsuit. I further conclude that Hudson is merely seeking to collect her judgment, rather than to impose liability upon someone not otherwise liable for the judgment. Therefore, the doctrine of ancillary jurisdiction gives the district court subject matter jurisdiction over the garnishment action. For the following reasons, I would REVERSE the district court's order granting the City's motion to quash Hudson's garnishment action and REMAND for further proceedings.

As discussed in the majority opinion, Hudson brought §§ 1983, 1985, and state law claims against the police officers arising from the police officers' theft of Hudson's dog.[1] On February 29, 2000, Hudson and the police officers entered into a consent judgment, whereby the police officers agreed to pay $300,000 in settlement of Hudson's claims. Then, on June 30, 2000, Hudson, seeking to collect the consent judgment, filed writs of garnishment on the City pursuant to

---

[1] Hudson named the City as a defendant in her complaint, but the district court granted summary judgment in favor of the City on September 30, 1998.

Federal Rule of Civil Procedure 69(a) ("Rule 69(a)") and Mich. Comp. Laws § 600.4011(1).[2] The district court found that it lacked subject matter jurisdiction over the garnishment action because the garnishment action seeks "to hold the City, a third party, liable for payment of a judgment on an independent legal theory, the indemnity agreement, which would require separate analysis and possible discovery concerning the City's defenses to liability." Majority Op. at 5. The majority affirms the district court's order quashing Hudson's garnishment action based upon the same reasoning employed by the district court.

---

[2] Rule 69 directs district courts to employ the procedures for executing judgments of the state in which the district court sits. *See* Fed. R. Civ. P. 69(a). Rule 69(a) provides:

> The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

*Id.*

The Michigan garnishment statute allows a prevailing plaintiff to seek a writ of garnishment against an obligation owed to the defendant, if the obligor is subject to personal jurisdiction in Michigan. *See* Mich. Comp. Laws § 600.4011(1). Section 600.4011(1) provides:

> [T]he court has power by garnishment to apply the following property or obligation, or both, to the satisfaction of a claim evidenced by contract, judgment of this state, or foreign judgment, whether or not the state has jurisdiction over the person against whom the claim is asserted:
>
> (a) Personal property belonging to the person against whom the claim is asserted but which is in the possession or control of a third person if the third person is subject to the judicial jurisdiction of the state and the personal property to be applied is within the boundaries of this state.
>
> (b) An obligation owed to the person against whom the claim is asserted if the obligor is subject to the judicial jurisdiction of the state.

*Id.*

Contrary to the majority, I would hold that the doctrine of ancillary jurisdiction gives the district court subject matter jurisdiction over the garnishment action. Unlike the majority, I conclude that the Supreme Court's holding in *Peacock v. Thomas*, 516 U.S. 349 (1996), does not prohibit this use of ancillary jurisdiction. Instead, I conclude that the Seventh Circuit's reasoning in *Yang v. City of Chicago*, 137 F.3d 522 (7th Cir. 1998), *cert. denied*, 525 U.S. 1140 (1999), and the Eastern District of Michigan's reasoning in *Childress v. Williams*, 121 F. Supp. 2d 1094 (E.D. Mich. 2000), correctly analyze *Peacock*'s effect on the doctrine of ancillary jurisdiction in Rule 69 proceedings.

In *Peacock*, Thomas had been awarded a judgment of $187,628.93 by the district court in his ERISA class action against Tru-Tech, his former employer. *Peacock*, 516 U.S. at 351. The district court had found that Tru-Tech breached its fiduciary duties in administering the corporation's pension benefits plan, but the district court had also explicitly ruled that Peacock, an officer and shareholder of Tru-Tech, was not a fiduciary. *Id.* Unable to obtain the money from Tru-Tech, Thomas sued Peacock in federal court alleging various theories, including a veil-piercing claim under ERISA. *Id.* at 352.

The Supreme Court held that ERISA does not authorize veil-piercing claims; therefore, ERISA did not provide a basis for federal jurisdiction over Thomas's veil-piercing claim. *Id.* at 353. The Court further held that the doctrine of ancillary jurisdiction did not apply to Thomas's veil-piercing claim, and as a result, the district court lacked subject matter jurisdiction over Thomas's action against Peacock. *Id.* at 355-59. In so holding, the Court stated that "a federal court may exercise ancillary jurisdiction '(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Id.* at 354 (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375,

379-80 (1994)). The Court held that Thomas's veil-piercing claim did not involve the first accepted usage of ancillary jurisdiction, as Thomas brought his veil-piercing claim in a subsequent lawsuit, and thus "the ability to resolve simultaneously factually intertwined issues vanished." *Id.* at 355. The Court further held that Thomas's veil-piercing claim did not involve the second accepted usage of ancillary jurisdiction because, although ancillary jurisdiction may be used to enforce judgments, the Court has "never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357.

In *Yang*, a post-*Peacock* decision, the Seventh Circuit held that the doctrine of ancillary jurisdiction gave the district court subject matter jurisdiction over Yang's Rule 69 garnishment action. *Yang*, 137 F.3d at 526. Yang had been awarded a substantial monetary judgment in his §§ 1983 and 1985 actions against two police officers. *Id.* at 522-23. Approximately three months later, "Yang filed a petition for indemnification and writ of execution, seeking indemnification of [his judgments against the officers] from the City of Chicago pursuant to 745 ILCS 10*9-102. Section 9-102 directs a municipality to indemnify a tort judgment entered against an employee if the employee's misconduct was within the scope of his employment." *Id.* at 524. The court held that "a Rule 69 garnishment proceeding to collect a judgment from a third person not party to the original suit is within a court's ancillary jurisdiction, providing 'the additional proceeding does not inject so many new issues that it is functionally a separate case.'" *Id.* at 526 (quotations omitted).[3] The court concluded that Yang's garnishment

---

[3]This holding is not inconsistent with the Tenth Circuit's view in *Sandlin v. Corporate Interiors, Inc.*, 972 F.2d 1212, 1217 (10th Cir. 1992), a pre-*Peacock* decision, in which the court held that the district court lacked subject matter jurisdiction over the plaintiff's subsequent veil-piercing claim because the claim involved new parties, new issues, and new theories of liability. The Tenth Circuit explicitly noted that the

action fell within the district court's ancillary jurisdiction because the only new issue raised in the action was whether the officers were acting within the scope of their employment when they violated Yang's constitutional rights. *See id.* The *Yang* court further distinguished *Peacock* by noting that the plaintiff in *Yang* was not trying to impose liability for a money judgment on a person not otherwise liable for the judgment, because if the officers were acting within the scope of their employment, the city would be liable for their judgment. *Id*. at 525 n.1. Similarly, in *Childress*, the Eastern District of Michigan held that the doctrine of ancillary jurisdiction gave it subject matter jurisdiction over Childress's Rule 69 garnishment proceeding because the only new issue raised in the proceeding was whether the officer was acting within the scope of his employment when he violated Childress's constitutional rights. *Childress*, 121 F. Supp. 2d at 1096.

The courts in both *Yang* and *Childress* reasoned that the Rule 69 garnishment actions were not separate lawsuits because they were post-judgment proceedings, and because the factual issues in the garnishment actions would overlap substantially with the factual issues in the underlying claims. *See Yang*, 137 F.3d at 526; *Childress*, 121 F. Supp. 2d at 1096. Thus, the garnishment actions involved the first accepted use of ancillary jurisdiction—resolving factually interdependent claims in a single proceeding. The courts in both *Yang* and *Childress* also reasoned that the district court's exercise of ancillary jurisdiction over the Rule 69 garnishment proceeding was necessary to effectuate the district court's prior judgment. *Yang*, 137 F.3d at 526; *Childress*, 121 F. Supp. 2d at 1096-97. Thus, the garnishment actions involved the second accepted usage of ancillary

---

plaintiff was not bringing a traditional indemnity claim. *Id*.

jurisdiction—protecting judgments.[4] In fact, the courts in both *Yang* and *Childress* relied upon the following passage from *Peacock* to support their holdings: "we have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments — including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *Peacock*, 516 U.S. at 356 (cited in *Yang*, 137 F.3d at 525; *Childress*, 121 F. Supp. 2d at 1096).[5]

I find the reasoning of the courts in *Yang* and *Childress* both convincing and applicable to the present case. Here, Hudson entered into a consent judgment with the police officers for $300,000. Hudson then brought a garnishment proceeding against the City pursuant to Rule 69 seeking to collect from the City in accordance with City's indemnification agreement with the police officers. Hudson's Rule 69 proceeding was a post-judgment proceeding, not a separate lawsuit. The factual issues in the garnishment proceedings will overlap substantially with those in Hudson's underlying §§ 1983, 1985, and state-law claims; therefore, the Rule 69 proceeding will not inject so many new issues as to become a functionally separate lawsuit. Unlike the plaintiff in *Peacock*, Hudson is not seeking to impose liability on the City for post-judgment conduct; rather, the City's potential liability arose when the police officers committed the conduct

---

[4] Federal courts have exercised ancillary jurisdiction in supplemental proceedings to effectuate judgments for over one hundred years. *See Root v. Woolworth*, 150 U.S. 401, 410-11 (1893). *Peacock* did not strip federal courts of subject matter jurisdiction over proceedings to effectuate judgments. *Peacock v. Thomas*, 516 U.S. 349, 356 (1996).

[5] Furthermore, in a footnote in *Peacock*, the Supreme Court explicitly stated that a Rule 69(a) proceeding was an effective mechanism for a district court to use in effectuating its judgment. *Peacock*, 516 U.S. at 359 n.7.

underlying Hudson's initial § 1983 action.[6] The only new factual issue involved in the Rule 69 garnishment proceeding will be whether the police officers were acting within the scope of their employment.[7] This is the exact same factual issue that both the Seventh Circuit and the Eastern District of Michigan found insufficient to render the Rule 69 garnishment proceedings separate, subsequent lawsuits. Additionally, the Rule 69 garnishment proceeding is necessary to enable the district court to effectuate its prior judgment against the police officers. Requiring a separate state-court lawsuit to enforce a federal-court judgment would compromise the federal interests that were resolved in the initial federal-court proceedings and would impose an unnecessary burden on state courts. *Childress*, 121 F. Supp. 2d at 1097. I respectfully dissent.

---

[6] For the same reason, the City cannot be considered a party that is not otherwise liable, because if the police officers were acting within the scope of their employment, the City would be liable for the police officers' conduct.

[7] The indemnification agreement between the City and the Flint Police Officers Association provides, in pertinent part:

> Whenever any judgment for damages, excluding punitive damages, is awarded against an Employee as the result of any civil action for personal injuries or property damage caused by the Employee while in the course of his employment, and while acting within the scope of his authority, the Employer will indemnify the employee or will pay, settle, or compromise the judgment.

Joint Appendix at 512 (Pls.' Br. in Opp'n to the City of Flint's Mot. to Quash Garnishment, Ex. A).