**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0589n.06

Case No. 19-4262

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 16, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| $1,264,000.00 in U.S. CURRENCY, | ) ) | COURT FOR THE NORTHERN DISTRICT OF OHIO |
| Defendant, | ) ) | |
| TODD N. ZAPPONE, et al., | ) ) | **O P I N I O N** |
| Claimants-Appellants, | ) ) | |
| DUNN COUNSEL PLC, et al., | ) ) | |
| Claimants-Appellees. | ) ) | |

**BEFORE: COLE, Chief Judge; McKEAGUE and WHITE, Circuit Judges.**

**McKEAGUE, Circuit Judge.** In 2012, after suspecting the Zappones of engaging in tax evasion and structuring, the Internal Revenue Service seized $1,264,000 in cash from the Zappones' scrap-metal company. That seizure spawned a litany of lawsuits filed by the Zappones in both state and federal court, a civil forfeiture action, a criminal investigation, and bankruptcy proceedings. After the United States and the Zappones reached a settlement agreement regarding the seized currency, the district court granted charging liens to two of the Zappones' former attorneys for unpaid legal fees. The Zappones appeal the grant of the charging liens, and we now **AFFIRM**.

**I.**

The story begins in 2012, when the Internal Revenue Service, Criminal Investigation Division (IRS-CI) began investigating Todd and Carrie Zappone for potential tax evasion and structuring violations. The Zappones owned Ohio Scrap Corporation, a scrap-metal operation and towing service. The IRS-CI obtained bank records from the scrap corporation that revealed banking activity consistent with structuring: specifically, forty-four withdrawals of amounts greater than $9,000 but not in excess of $10,000, in violation of 31 U.S.C. § 5324(a)(3). On November 8, 2012, the IRS-CI executed a search warrant at the Zappones' scrap company and seized $1,264,000.00 in currency.

The United States then initiated a civil forfeiture action on April 22, 2013. The Zappones had several different attorneys represent them during the forfeiture proceeding. One of them was Robert Fedor, who was retained in May 2013. Fedor filed the Zappones' answer to the government's Verified Complaint, Verified Claims for the scrap company and the Zappones, a Motion to Lift Stay of Civil Forfeiture Proceeding, and a Motion for Hardship Release or Substitution of Assets. Fedor also represented the Zappones in their bankruptcy proceeding and in an action against Fifth Third Bank. At the Zappones' request, Fedor filed a deprivation of rights action under 42 U.S.C. § 1983 and prepared a *Bivens* complaint against the federal agents who seized the currency. When the Zappones stopped paying Fedor's legal fees, he withdrew from his representation. Attorney Stephen Dunn took over in September 2014. Dunn negotiated a favorable settlement agreement with the government and prepared and filed the Zappones' delinquent tax returns. Like Fedor, Dunn withdrew when the Zappones stopped paying his fees.

The settlement agreement between the United States and the Zappones provided that part of the seized currency would be used to pay off the Zappones' federal tax liability and debt to

Farmers & Merchants State Bank, that part of it would be returned to the Zappones, and that the bankruptcy proceedings would be dismissed. The government also agreed to create a judgment fund in the amount of $140,000 to pay the Zappones' attorney's fees. Attorneys Dunn and Fedor filed charging liens against the fund for unpaid attorney's fees in the amounts of $67,562.25 and $104,860.00, respectively. In support of their motions for charging liens, Dunn and Fedor submitted affidavits and billing statements detailing their work on behalf of the Zappones.

On November 22, 2019, the district court issued an order exercising its ancillary jurisdiction over the charging liens and granting Dunn's and Fedor's motions in part. The district court found that four of Dunn's and eleven of Fedor's billing entries were not reasonably connected to obtaining a judgment in the Zappones' favor and excluded them from their total amounts due. Lastly, the court concluded that Dunn and Fedor were not entitled to reimbursement of their out-of-pocket expenses. In the end, the court calculated that Dunn was owed $63,651.75 and Fedor was owed $102,943.00. Because the total amount due to each attorney exceeded the amount available in the judgment fund, the court instead awarded them a proportionate percentage: 38.21% for Dunn, or $53,494.00, and 61.79% for Fedor, or $86,506.00.

The Zappones appeal the district court's decision to grant the charging liens and argue that the court erred in (1) exercising ancillary jurisdiction over the charging liens, (2) allowing Dunn and Fedor to recover attorney's fees for work done on matters other than the civil forfeiture proceeding, and (3) improperly shifting the burden of production from Dunn and Fedor to themselves to disprove the reasonableness and fairness of the fees.

**II.**

The Zappones urge this Court to review the district court's exercise of ancillary jurisdiction and decision to grant the charging liens de novo. Their argument rests on the premise that charging

liens are contractual in nature and contract interpretation is reviewed de novo. But attorney charging liens are not contracts; rather, they are "founded on the equitable principle that an attorney is entitled to be paid his or her fees out of the judgment rendered in the case." *Fire Prot. Res., Inc. v. Johnson Fire Prot. Co.*, 594 N.E.2d 146, 148 (Ohio Ct. App. 1991) (quoting *Mancino v. Lakewood*, 523 N.E.2d 332, 337 (Ohio Ct. App. 1987)). The right to a charging lien exists regardless of whether the attorney and client have an agreement as to the payment of fees. *Id.* The Zappones' reliance on *In re Brunswick Apartments of Trumbull County., Ltd.*, a bankruptcy appeal in which the court reviewed de novo an award of attorney's fees pursuant to a promissory note, is unavailing. 215 B.R. 520, 522 (B.A.P. 6th Cir. 1998). This case does not concern a contract or written agreement for attorney's fees but rather the equitable right of an attorney to payment of fees earned in obtaining a judgment, which the Zappones themselves concede in their brief. *See* Zappone Br. at 16 ("The charging lien is an equitable lien and the courts engage in an equitable proceeding in ruling on attorney charging liens.").

Under Ohio law, the decision to grant a charging lien is reviewed for abuse of discretion. *See Galloway v. Galloway*, 80 N.E.3d 1225, 1231 (Ohio Ct. App. 2017) ("Whether an attorney should be granted a charging lien 'is left to the sound discretion of the court of equity, the exercise of which should be based on the facts and circumstances of the case.'" (quoting *Minor Child of Zentack v. Strong*, 614 N.E.2d 1106, 1108 (Ohio Ct. App. 1992))); *see also Cuyahoga Cnty. Bd. of Comm'rs. v. Maloof Props., Ltd.*, 968 N.E.2d 602, 604 (Ohio Ct. App. 2012). We do, however, review a district court's determination of subject-matter jurisdiction de novo. *See Hudson v. Coleman*, 347 F.3d 138, 141 (6th Cir. 2003).

*A. Ancillary Jurisdiction*

Appellants first argue that the district court erred in exercising its ancillary jurisdiction to grant Dunn's and Fedor's charging liens. A federal court may exercise ancillary jurisdiction "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379-80 (1994)). The district court invoked the second category, which is generally referred to as ancillary enforcement jurisdiction. *See Hudson*, 347 F.3d at 142. Ancillary enforcement jurisdiction stems from a federal court's inherent power to enforce its judgment and has been exercised over a "broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *Peacock*, 516 U.S. at 356.

The Zappones claim the district court erred in exercising its ancillary jurisdiction because attorneys Dunn and Fedor did not "come into court with clean hands," as individuals who seek equitable relief must. The Zappones conflate two issues: (1) whether the district court erred in exercising ancillary jurisdiction, and (2) whether the district court abused its discretion in granting the charging liens because Dunn and Fedor did not provide competent representation to the Zappones.

As for the first issue, the district court properly exercised its ancillary jurisdiction over the motions for charging liens. Under Ohio law, an attorney may bring a charging lien against a monetary judgment awarded to the attorney's present or former client on the theory that the attorney's "services and skill created the fund" and that equity creates a right in the attorney to be

paid out of that fund any "fees earned in the prosecution of the litigation to judgment." *Cuyahoga Cnty. Bd. of Comm'rs*, 968 N.E.2d at 605 (quoting *Cohen v. Goldberger*, 141 N.E. 656, 656 (Ohio 1923)). Counsel who have been discharged as of the date of the judgment may also assert a charging lien "so long as counsel can demonstrate the significance his contribution has to that judgment." *Id.* Federal courts may exercise ancillary jurisdiction over fee disputes between litigants and their attorneys when the dispute relates to the main action. *See, e.g.*, *Exact Software N. Am., Inc. v. DeMoisey*, 718 F.3d 535, 545 (6th Cir. 2013); *Kalyawongsa v. Moffett*, 105 F.3d 283, 287 (6th Cir. 1997) ("Resolution of related fee disputes is often required to provide a full and fair resolution of the litigation."). Dunn's and Fedor's fee disputes are directly related to the resolution of the main action (the civil forfeiture proceeding) because part of the overall settlement included the creation of the $140,000 judgment fund for unpaid attorney's fees. The district court properly exercised ancillary jurisdiction over the charging liens.

As for the second issue, whether the district court abused its discretion in granting the charging liens because Dunn and Fedor did not come into court with clean hands, Dunn and Fedor argue that the Zappones have forfeited this argument by not raising it before the district court. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) ("[A]n argument not raised before the district court is waived on appeal to this Court."). We deviate from this general waiver rule only when it "would produce a plain miscarriage of justice or when there are exceptional circumstances that militate against finding a waiver." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 615 (6th Cir. 2014) (internal quotations omitted).

There are no exceptional circumstances here. The Zappones' "clean hands" argument is a highly intensive question of fact that would require an evidentiary hearing in order to determine whether Dunn and Fedor competently represented the Zappones in their many lawsuits over the

span of eight years. Moreover, the Zappones had ample opportunity to raise the "clean hands" argument in their responses in opposition to Dunn's and Fedor's charging liens, at the evidentiary hearing on September 25, 2019, and in their post-hearing briefing regarding the scope of the liens. The Zappones have also failed to demonstrate any exceptional circumstances that would have prevented them from raising this issue in the district court. Therefore, we decline to consider the Zappones "clean hands" argument.

### B. Scope of Charging Liens

Next, the Zappones argue that the district court erred in granting attorney's fees to Dunn and Fedor for work that was not related to the civil forfeiture proceeding. The court found that Dunn's and Fedor's work on the Zappones' tax, bankruptcy, and criminal matters, as well as the related litigation against Fifth Third Bank, was necessary to achieve the overall settlement with the government, and we agree. Ohio law permits attorneys asserting a charging lien to include fees earned in related lawsuits "resolved as part of the overall settlement in the underlying lawsuit." *Galloway*, 80 N.E.3d at 1232. Dunn prepared and filed the Zappones' delinquent income tax returns in an effort to avoid criminal charges. He also negotiated with Farmers Bank to seek settlement of the Zappones' business debt. Similarly, by working with IRS-CI, Fedor was able to obtain a declination of criminal tax charges against the Zappones as well as resolve their outstanding tax liability. Fedor then filed a Chapter 11 bankruptcy proceeding for the scrap company to prevent Farmers Bank from seeking a receivership over the business. Fedor also filed an action against Fifth Third Bank because the Zappones maintained that the bank staff directed them to withdraw amounts of less than $10,000 to reduce their paperwork.

The ultimate settlement of the civil forfeiture action, including the dismissal of the Zappones' bankruptcy proceeding, the settlement of their IRS liability and business debt to

Farmers Bank, and the creation of the attorney-fee judgment fund, was a result of the "skills and services" rendered by Dunn and Fedor in the several intertwined matters. *See id.* (upholding the trial court's order granting a charging lien for attorney's fees from several related lawsuits that were necessary to achieve the client's overall goal). Accordingly, the district court was correct in awarding charging liens that included Dunn's and Fedor's work on related matters.

## C. *Burden of Production*

Lastly, the Zappones argue that the district court improperly shifted the burden of production from Dunn and Fedor to the Zappones to disprove the reasonableness and fairness of the fees. The Zappones are correct in noting that "[t]he party seeking equitable relief has the burden of providing the court of equity with every necessary evidence in aid of its contention." *Garrett v. City of Sandusky*, No. E-03-024, 2004 WL 1125157, at *4 (Ohio Ct. App. 2004). But the district court adhered to this standard in requiring Dunn and Fedor to produce, in support of their motions for charging liens, affidavits and billing statements describing their services and the amounts billed. In response to the motions, the Zappones argued that several of the billing entries Dunn and Fedor submitted were for work that was not related to obtaining the final judgment. The court agreed with some of these contentions and excluded several billing entries from both Dunn and Fedor that were not reasonably connected to the overall settlement.

The Zappones take issue with the following conclusion in the district court's order: "The Zappones fail to disprove the assertions by Fedor and Dunn that their work on tax, criminal, and bankruptcy matters, as well as on related litigation against Fifth Third Bank, was necessary to obtain the final resolution of the Zappones' overall goal of recovering the funds the government sought." The court did not shift the burden of production from Dunn and Fedor to the Zappones, but instead found that Dunn and Fedor had met their burden of production by providing affidavits

and billing statements detailing their work. Thus, the Zappones needed to demonstrate that the work Dunn and Fedor performed on their tax, criminal, and bankruptcy matters was unrelated to the overall settlement, which they failed to do.  We find no error in the district court's analysis.

### III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.