**Julie A. PUCCI, Plaintiff,**

v.

**Chief Judge Mark W. SOMERS, in his individual capacity, Defendant,**

**and**

**City of Dearborn, Garnishee-defendant.**

**Case No. 07–10631.**

United States District Court, E.D. Michigan, Southern Division.

Aug. 16, 2013.

Joel B. Sklar, Sanford Plotkin, Sanford Plotkin, P.C., Detroit, MI, for Plaintiff.

Christina M. Grossi, Michael O. King, Jr., Michigan Dept Of Attorney General, Lansing, MI, Mark W. Somers, Dearborn, MI, for Defendant.

### *OPINION AND ORDER GRANTING MOTION TO QUASH WRITS OF GARNISHMENT FOR WANT OF JURISDICTION AND DENYING MOTIONS FOR SUMMARY JUDGMENT*

DAVID M. LAWSON, District Judge.

On December 16, 2011, the Court entered an amended judgment against defendant state district court judge Mark Somers in the amount of $1,173,125.30 (which included prejudgment interest and attorney's fees) based on a jury award following trial. Now before the Court are motions relating to a writ of garnishment that the plaintiff served on the City of Dearborn, Michigan, which is the local funding unit for the court in which Judge

Somers presides. Garnishee defendant Dearborn has filed a motion to quash the writ, alleging that the Court has no jurisdiction to entertain it, and the plaintiff and Dearborn have filed cross motions for summary judgment asserting their respective positions on liability for the judgment. The Court heard argument on the motions on November 21, 2012 and now concludes, after careful consideration, that it does not have jurisdiction to adjudicate this dispute. Sixth Circuit precedent holds that garnishment proceedings of this type—so-called "non-periodic garnishments"—require an independent basis for exercising federal jurisdiction, even though the garnishment is issued in an attempt to enforce a federal judgment. Therefore, the Court must dismiss the plaintiff's garnishment without prejudice. She must seek her remedies against the state district court and the City of Dearborn under the federal judgment in state court.

## I.

The detailed facts of this case are recounted in the Court's opinion and order denying the defendants' first motion for summary judgment, *Pucci v. Nineteenth Dist. Court,* 565 F.Supp.2d 792, 796–802 (E.D.Mich.2008), and the Sixth Circuit's previous opinion on interlocutory appeal, *Pucci v. Nineteenth Dist. Court,* 628 F.3d 752, 755–59 (6th Cir.2010). To summarize, the plaintiff began her employment with the Nineteenth District Court in 1991 and through promotions became a deputy court administrator in 1998. In 2001, she began a romantic relationship with Judge Hultgren of that court. That relationship was opposed by Judge Somers, one of the other judges, leading to tension among the judges and between the plaintiff and Somers. The plaintiff was in line for a promotion to the court administrator position upon the retirement of the incumbent, but Somers blocked that advancement. The plaintiff also had complained to one of the state's regional court administrators that Judge Somers sent religious messages on court stationery and was proselytizing from the bench. When Judge Somers became chief judge, he eliminated the plaintiff's position and obtained from the Michigan Supreme Court a letter that states that the plaintiff should not become the court administrator. After the plaintiff's deputy court administrator position was eliminated and she was fired, she brought the present lawsuit, alleging, among other things, a violation of her rights under the First Amendment and the Due Process Clause.

The lawsuit named as defendants the City of Dearborn, the Nineteenth District Court, and Judge Somers in his official and individual capacities. The parties agreed to the dismissal of the City, and the Sixth Circuit on interlocutory appeal held that the district court was an arm of the State of Michigan and therefore the district court and Judge Somers in his official capacity were entitled to Eleventh Amendment immunity.

The case proceeded to a jury trial against Judge Somers as the sole defendant beginning on June 22, 2011. On June 30, 2011, the jury returned a verdict, finding for the plaintiff on her claims of violation of procedural due process and retaliation for the exercise of her First Amendment rights, and awarded compensatory and punitive damages of $734,361. The jury found for the defendant on the plaintiff's claim of sex discrimination. On December 16, 2011, the Court entered an amended judgment in the amount of $1,173,125.30, which included prejudgment interest and attorney's fees.

According to the parties' briefing on the present motion, other developments were afoot. On June 13, 2011, defendant Somers, who was at that time the chief judge of the Nineteenth District Court, issued a

written indemnification policy that provided that it was the official policy of the Nineteenth District Court to indemnify supervisory personnel for the cost of defending and for any judgment resulting from "discretionary administrative decisions made within the scope of [the supervisor's] authority," including employment decisions and reorganization decisions. Pl.'s Mot. for Summ. J. Ex. A. The policy then states that if the Nineteenth District Court did not have the funds necessary to pay such a judgment, the court would present the City of Dearborn with the judgment for appropriation of the required funds. The policy appears to track other such administrative provisions adopted by other district courts around the state, but the timing of its adoption by the Nineteenth District Court ought to raise eyebrows, as it was signed by Judge Somers eight days before his trial began in this case.

On January 1, 2012, defendant Somers was replaced as chief judge by Richard Wygonik. According to Chief Judge Wygonik's affidavit, he has ratified the indemnity policy and decided to indemnify the defendant for the judgment or any settlement in this case. The City of Dearborn has funded two settlements in related cases filed against the defendant and the Nineteenth District Court. In addition, the Nineteenth District Court purchased an insurance policy on February 26, 2010 covering judicial liability and employment practices claims, with a policy limit of $1,000,000 and an employment practices claims sublimit of $200,000. The Nineteenth District Court states that the policy covers the court and was paid for by the City; the policy itself names the defendant as an insured.

After the Court filed an opinion and order denying the defendant's motion for judgment as a matter of law, stay of judgment, or remittitur, the plaintiff procured two periodic writs of garnishment issued on January 5, 2012 to the Dearborn Department of Technology, Management, and Budget and the City of Dearborn Finance Department. A non-periodic writ of garnishment was issued on January 10, 2012; the garnishee was Dearborn Federal Savings Bank. The plaintiff requested release of the garnishments of the City of Dearborn Finance Department and the Dearborn Federal Savings Bank on February 9, 2012, and the garnishments were released on February 16, 2012.

The plaintiff requested a new non-periodic writ of garnishment directed to the Treasurer of the City of Dearborn, which was issued on May 11, 2012. Accompanying the writ sent to the City of Dearborn was a letter from plaintiff's counsel stating that the writ seeks full payment of the judgment based on the City's legal obligation to pay for the judgment or to finance the Nineteenth District Court's indemnification agreement. Dearborn filed a motion to quash the writ of garnishment on May 25, 2012 and filed two garnishee disclosures on June 5 and 6, 2012. The garnishee defendant asserted that it did not believe that it was required by law to indemnify a state judicial officer for a judgment against him in his individual capacity.

The City of Dearborn and the plaintiff then filed cross motions for summary judgment; the Nineteenth District Court filed an *amicus curiae* brief on the same day. The plaintiff argues that the City is liable for the judgment against Judge Somers under both Michigan law and the terms of the indemnification policy. The City argues that the garnishment is improper for several reasons and that it is not responsible for paying the judgment. The Nineteenth District Court, writing as an *amicus curiae*, concurs in the plaintiff's arguments and also argues that the City is estopped from denying responsibility for

the judgment on the basis of its participation in settlement negotiations in this and other cases.

## II.

The motion to quash calls into question the Court's jurisdiction to adjudicate the dispute raised by the writs of garnishment. Federal courts are courts of limited jurisdiction, and the burden of establishing jurisdiction rests with the party seeking to invoke it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The plaintiff caused the Clerk of this Court to issue the writs of garnishment against the City of Dearborn under the authority of Federal Rule of Civil Procedure 69, which generally allows proceedings to collect federal judgments in the manner that "accord[s] with the procedure of the state where the court is located." Fed.R.Civ.P. 69(a)(1). But Rule 69 does not itself independently confer subject matter jurisdiction on the federal courts over all garnishment proceedings related to a federal judgment. *Hudson v. Coleman*, 347 F.3d 138, 144 & n. 4 (6th Cir. 2003).

A case that provides guidance on the question of subject matter jurisdiction in proceedings to enforce judgments is *Peacock v. Thomas*, 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996). There, the plaintiff obtained a federal judgment against a corporation, and then filed a separate lawsuit against a corporate officer and shareholder to collect that judgment under an *alter ego* theory. There was no federal question in the latter case and the parties were not diverse. Therefore, jurisdiction over the action could be found only if it were ancillary to the original action.

The Court observed that "a federal court may exercise ancillary jurisdiction '(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'" *Peacock*, 516 U.S. at 354, 116 S.Ct. 862 (quoting *Kokkonen*, 511 U.S. at 379–80, 114 S.Ct. 1673). And the Court acknowledged that "[i]n defining that power, we have approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *Id.* at 356, 116 S.Ct. 862 (citations omitted). But the Court found no jurisdiction in that case because the plaintiff's action was "founded not only upon different facts than the [original] suit, but also upon entirely new theories of liability." *Id.* at 358, 116 S.Ct. 862.

The purpose of a garnishment proceeding is to allow a judgment creditor to satisfy her judgment from money, credits, or other property belonging to the judgment debtor that is in the hands of someone else. *See generally* 6 Am.Jur.2d *Attachment and Garnishment* § 2 (2013) (explaining that " '[g]arnishment' is a proceeding in which the property, money, or credits of a debtor that are in the possession of another, i.e., the garnishee, are applied to the payment of a debt. A 'garnishment' is used to attach property of the judgment debtor that is in the possession of a third party"). A garnishment proceeding, therefore, "is effectively a proceeding by the judgment debtor in the name of the judgment creditor against the garnishee." *Ibid.* Such proceedings are recognized under Michigan law. *Carpenters Southern California Administrative Corp. v. Manufacturers Nat. Bank of Detroit*, 910 F.2d 1339, 1340 (6th Cir.1990) ("Under Michigan law, a judgment-credi-

tor may attempt to collect a judgment by garnishing property belonging to the judgment-debtor that is in the possession or control or a third party." (citing Mich. Comp. Laws § 600.4011; Mich. Ct. R. 3.101)).

The plaintiff's theory in pursuing the City of Dearborn on the judgment she obtained individually against Mark Somers is that Somers, in acting under color of law as a state district court chief judge, is entitled to indemnity from the Nineteenth District Court for liability that arises from his official actions; and as the funding unit for the Nineteenth District Court, the City of Dearborn is responsible to pay that indemnity. Dearborn challenges that chain of reasoning at several of its links. This Court's jurisdiction to address those challenges depends on whether or not the plaintiff's claim against Dearborn is "founded ... upon different facts than the [original] suit" or based "upon entirely new theories of liability." *Peacock,* 516 U.S. at 358, 116 S.Ct. 862. Sixth Circuit precedent suggests that the plaintiff's claims against Dearborn are factually and legally different than the matters raised in the main case, and therefore there is no ancillary jurisdiction.

The Sixth Circuit case on point is *Hudson v. Coleman,* on which Dearborn heavily relies. In that case, the plaintiff alleged that two Flint police officers stole her dog. The plaintiff won a consent judgment on her claims against the officers, and attempted to collect the judgment by filing writs of garnishment against the City of Flint, asserting that the city was liable to pay the judgment based on an indemnity agreement between Flint and the Police Officers Union. The indemnity agreement provided that the City would pay judgments resulting from civil actions "for personal injuries or property damage cause by the Employee while in the course of his employment, and while acting within the scope of his authority." *Hudson,* 347 F.3d at 140–41. The City of Flint filed a motion to quash the garnishment, which the district court granted.

The Sixth Circuit affirmed, finding that there was "no rationale to support exercising ancillary jurisdiction over Plaintiff's state law indemnity claim against the City." *Id.* at 143 (citing *Peacock,* 516 U.S. at 358, 116 S.Ct. 862). The court discussed the two categories of ancillary jurisdiction. The first encompasses claims that are "factually interdependent," a category largely codified in the supplemental jurisdiction statute, 28 U.S.C. § 1367. *Id.* at 142 (quoting *Peacock,* 516 U.S. at 354, 116 S.Ct. 862). The second category "is generally referred to as 'ancillary enforcement jurisdiction.'" *Ibid.* The court then noted that the indemnity claim was not asserted until after the City of Flint was dismissed as a party and the case against the individual plaintiffs were settled. Therefore, the court reasoned, there were "no factually intertwined issues to resolve and neither the convenience of the litigants nor considerations of judicial economy" justified the exercise of the first category of ancillary jurisdiction. *Id.* at 143.

A more logical means of finding ancillary jurisdiction would have been through the second category, since the plaintiff, after all, was attempting to enforce a federal judgment by resorting to an obligation the City of Flint owed to the judgment debtors. *See Yang v. City of Chicago,* 137 F.3d 522, 526–27 (7th Cir.1998) (holding that the court had jurisdiction over a judgment creditor's garnishment proceeding involving the judgment debtor's indemnity agreement with garnishee-defendant-employer because interpreting the scope of employment issue in order to resolve the indemnity question did "not inject so many new issues into the action as to make it functionally a separate case") (quoting

*Wilson v. City of Chicago*, 120 F.3d 681, 684 (7th Cir.1997)). But the Sixth Circuit did not choose that path. Instead, the court stated that the City was a "third party not a party to the consent judgment" and that the plaintiff was seeking to impose liability on the City based on "a legal theory entirely independent from that in the original action." *Hudson*, 347 F.3d at 143. The court observed that there was no evidence in the record as to whether the officers were acting in the course of their employment or in the scope of their authority when they stole the plaintiff's dog, and therefore important issues in interpretation of the indemnity provision were unresolved. *Id.* at 143–44.

The court found the reference to garnishment proceedings in *Peacock* not to be controlling, as that reference was to "the typical garnishment proceeding ... [involving] the garnishee's paying the judgment creditor/garnishing party directly for funds, such as a salary, owed by the garnishee to the defendant in the underlying action." *Id.* at 144. The court then attempted to draw a distinction it perceived as a part of Michigan law between "periodic" garnishments—i.e., efforts to obtain a judgment debtor's wages from an employer—and "non-periodic" garnishments, which it did not attempt to define. The court then concluded that because "[t]he City's liability under the newly presented indemnity principle [was] far from established," the court lacked jurisdiction over the garnishment action. *Id.* at 145.

■ Dearborn argues that precisely the same analysis applies in this case. It argues that the plaintiff is attempting to use state law garnishment procedures to impose liability on a third party, the City of Dearborn, that is not bound by the judgment entered against the defendant. The indemnification theory is a new theory that was not a part of the previous proceedings in this case.

There are two reasons that *Hudson* may not control, however. First, in *Hudson*, a significant factual issue—whether the police officers were acting in the scope of their employment—would need to be decided before determining whether the City was liable under the indemnification policy. In contrast, in this case, there is really no factual or interpretive dispute over whether the indemnification policy covers the judgment. The only question is a legal one: whether the City of Dearborn, as the funding unit for the Nineteenth District Court, is obligated, either by virtue of the indemnification policy or of Michigan law, to pay the judgment in this case. This is a rather complicated issue of state law, but it does not require factual development. It is clear that the Sixth Circuit in *Hudson* was concerned with the need for fact-finding in the underlying garnishment action, declaring that "[i]t is inappropriate for a Court to decide legitimate scope of employment and/or scope of authority questions without the benefit of fact-finding and briefing." *Id.* at 146. Here, there is no issue requiring fact-finding for the Court to decide on the indemnity issue.

Second, the actual holding in *Hudson* was rather narrower than the language of the opinion at points suggests. The Court's actual holding was "that legitimate, unresolved disputes concerning whether conduct occurs within the scope of employment or authority deprives a federal court of ancillary jurisdiction in a garnishment action pursuant to *Peacock*." *Hudson*, 347 F.3d at 146. That precise situation does not obtain here, and therefore *Hudson* is not dispositive.

However, the broader principle derived from *Hudson* (confused, perhaps, by the artificial distinction between "periodic" and "non-periodic" garnishments) is that where there is a genuine dispute over whether the money, credits, or other property in

the hands of a third party actually belong to the judgment debtor, courts must be sensitive to the possibility that ancillary enforcement jurisdiction may not exist. That sensitivity is highlighted by the Supreme Court's caution that "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673. If that dispute is not factually intertwined with the facts of the main case on which federal jurisdiction is premised, or injects new legal theories that were distinct from those in the underlying action, then federal courts must find an independent basis upon which to exercise subject matter jurisdiction.

Applying that rule to this case, it is plain that new legal questions must be addressed before one might conclude that the City of Dearborn must fund the indemnification of judgment debtor Mark Somers. The parties have cited legal authority addressing the question whether a local funding unit is obliged to satisfy a judgment rendered against a state district court. Perhaps the plaintiff has the better of that argument. *See Cameron v. Monroe,* 457 Mich. 423, 579 N.W.2d 859 (1998); *Anspach v. City of Livonia,* 140 Mich.App. 403, 364 N.W.2d 336 (1985); *Dolan v. City of Ann Arbor,* 666 F.Supp.2d 754 (E.D.Mich.2009).

 However, although the cases the plaintiff cites suggest that if the judgment in this case were against the Nineteenth District Court, the City likely would be liable to pay it, the judgment is not a judgment against the Nineteenth District Court. It is a judgment against Mark Somers in his individual rather than official capacity. The plaintiff and the district court elide this distinction, but it is an important one. A suit against a public official in his official capacity is merely "another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of*

*New York,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Such an action imposes liability on the entity that the official represents, not the individual personally. *Brandon v. Holt,* 469 U.S. 464, 471–72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). In contrast, "[p]ersonal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Therefore, "an award of damages against an official in his personal capacity can be executed only against the official's personal assets." *Id.* at 166, 105 S.Ct. 3099. The distinction between those two forms of suit suggests that the effects of a judgment against a district court cannot be uncritically mapped onto a judgment against a judge in his personal capacity.

Nor do the cases cited by the plaintiff provide strong support for the notion that a local funding unit is equally responsible to pay a judgment against a judge in his personal capacity. Of the cases cited by the plaintiff, only one mentions the possibility that a local funding unit could be responsible for a judgment against a judge, rather than a court. *See Anspach,* 140 Mich.App. at 410, 364 N.W.2d at 339. Moreover, Dearborn has raised significant questions over the authority of the defendant in this case and his successor chief judge to implement the indemnity policy adopted days before the trial in this case began.

The question of Dearborn's liability on the federal judgment is far from settled. Resolution of that question requires consideration of legal issues that formed no part of the underlying case, and perhaps a few factual matters as well. The garnishment action pressed by the plaintiff here can be characterized as nothing other than a "proceeding[ ] that [is] ' "entirely new

and original,'' ' [ ] where 'the relief [sought is] of a different kind or on a different principle' than that of the prior decree.'' *Peacock,* 516 U.S. at 358, 116 S.Ct. 862 (citations omitted). Consequently, there is no ancillary jurisdiction to entertain it.

## III.

The Court must conclude that it has no ancillary jurisdiction to adjudicate the legal issues raised by the writs of garnishment filed against the City of Dearborn. The parties have not identified an independent basis for federal subject matter jurisdiction over the dispute raised in the garnishment proceedings. The questions raised must be addressed by a state court.

Accordingly, it is **ORDERED** that the motion by garnishee defendant City of Dearborn to quash the writs of garnishment [dkt. # 151] is **GRANTED** and the writs of garnishment are **QUASHED.**

It is further **ORDERED** that the motions for summary judgment [dkt. # 166, 167] are **DISMISSED WITHOUT PREJUDICE as moot.**