# STATE OF MICHIGAN

# COURT OF APPEALS

JULIE A. PUCCI,

        Plaintiff-Appellee,

v

NINETEENTH JUDICIAL DISTRICT COURT,

        Garnishee Defendant-Appellant,

and

CHIEF JUDGE MARK W. SOMERS and
COMERICA BANK,

        Defendants.

UNPUBLISHED
March 17, 2016

No. 325052
Wayne Circuit Court
LC No. 13-014644-CZ

Before: SAAD, P.J., and SAWYER and HOEKSTRA, JJ.

PER CURIAM.

Garnishee defendant, Nineteenth Judicial District Court, appeals as of right from the final judgment in which the trial court granted summary disposition in favor of plaintiff, Julie A. Pucci, and ordered defendant Court to pay $1,183,330.96 in damages. Defendant Court contends that it has no obligation to pay damages because the judgment in the underlying federal case was entered against defendant Judge Mark W. Somers individually and the federal court dismissed defendant Court as a party to the underlying action. We agree and reverse and remand.

## I. THE FEDERAL COURT PROCEEDINGS

The instant case arises from plaintiff's unlawful termination as Deputy Court Administrator of the Nineteenth District Court by then Chief Judge Mark W. Somers as part of a court-wide reorganization. In *Pucci v Nineteenth Dist Court (Pucci I)*, 565 F Supp 2d 792, 796-802 (ED Mich, 2008), the federal district court provides a lengthy narrative of plaintiff's employment history with defendant Court and the events surrounding her termination. In the following, we summarize the facts after her termination.

On February 12, 2007, plaintiff filed a lawsuit pursuant to 42 USC 1983 in the United States District Court for the Eastern District of Michigan against defendants Judge Somers, the

-1-

City of Dearborn, and the Nineteenth District Court. Plaintiff alleged that defendant Somers violated her First Amendment right to free speech and Fourteenth Amendment right to due process. Plaintiff claimed that Judge Somers wrongfully terminated her position with the court because her domestic relationship with one of the others judges on the court, outside the bonds of marriage, was contrary to Somers's religious beliefs. She further asserted that Judge Somers terminated her employment because she complained of his practice of interjecting his personal religious beliefs into court proceedings and administrative matters. Plaintiff sued defendant Somers in both his individual capacity and official capacity.

Subsequently, the City of Dearborn was dismissed from the case by stipulation of the parties and an order of the court. The remaining defendants sought summary disposition on all counts of the plaintiff's complaint, and sought appeal to the United States Court of Appeals for the Sixth Circuit when the district court denied their motion in part. On appeal, plaintiff's claims against defendant Court and defendant Somers in his official capacity were dismissed under Eleventh Amendment sovereign immunity. *Pucci v Nineteenth Dist Court (Pucci II)*, 628 F3d 752, 769 (CA 6, 2010). The damage claims against defendant Somers in his personal capacity remained and proceeded to trial. *Id*. On June 30, 2011, the jury returned a verdict against him, concluding that he violated plaintiff's right to procedural due process and retaliated against her for the exercise of her First Amendment rights by terminating her employment. It found in defendant Somers's favor on the sex-discrimination claim. Thereafter, the federal district court entered a judgment in the amount of $1,173,125.30 against defendant Somers in accordance with the jury's verdict. The jury's verdict and award were affirmed on appeal in *Pucci v Nineteenth Dist Court (Pucci III)*, 596 Fed Appx 460, 462 (CA 6, 2015).

After entry of the judgment, plaintiff sought to collect from Judge Somers's personal assets and began garnishing his salary on a periodic basis. Plaintiff also attempted to collect from the City of Dearborn by filing non-periodic writs of garnishment against it in federal court seeking payment of the judgment. The federal district court quashed the writs of garnishment, finding that it lacked jurisdiction to adjudicate the matter. *Pucci v Somers (Somers)*, 962 F Supp 2d 931, 933, 939 (ED Mich, 2013). In the court's opinion dismissing the matter, it noted "other developments" in the case, specifically the indemnification theory. *Id*. at 933-934. Plaintiff sought garnishment against the City on the basis of an indemnification policy that defendant Somers issued only nine days before the federal trial began. The policy provided that the Nineteenth District Court would indemnify any judgment entered against judges of the Court for discretionary administrative decisions within the scope of their authority, including employment and reorganization decisions. The district court acknowledged that new legal questions must be addressed before it could be determined that defendant City must indemnify defendant Somers. *Id*. at 938. The district court ruled that because the indemnification matter was "factually and legally different than the matters raised in the main case," plaintiff must seek remedies against the Court and the City under the federal judgment in state court. *Id*. at 933, 936.

## II. THE CIRCUIT COURT PROCEEDINGS

Accordingly, on November 11, 2013, plaintiff domesticated the federal judgment in Wayne Circuit Court. The trial court issued a writ on defendant Court as garnishee to enforce its obligation to indemnify defendant Somers. Plaintiff and defendant Court filed cross motions for summary disposition pursuant to MCR 2.116(C)(10) seeking a ruling on the issue of liability.

Plaintiff contended that the writ of garnishment issued on defendant Court was proper on the basis of the indemnification policy, which covered its chief judge for personal obligations where he was discharging his administrative functions or dispensing the business of the district court. Plaintiff argued that she was entitled to summary disposition against defendant Court as the garnishee defendant for the damages owed under the indemnification policy for the benefit of defendant Somers. Defendant Court asserted that it could not be held responsible for an individual capacity judgment in a case in which it had been granted sovereign immunity from suit. Additionally, it argued that the indemnification policy on which plaintiff was attempting to collect was unenforceable, and defendant Somers's actions regarding the termination of plaintiff's employment were not within the scope of the policy.

The trial court issued its decision, holding that defendant Court was responsible for the unpaid judgment under the indemnification policy that defendant Somers issued. The trial court found that defendant Somers's action of eliminating plaintiff's position at the court, while an infringement on her constitutional rights, was done in his administrative capacity as a judge of the district court. The trial court explained that he had the power as chief judge to manage the performance of the court's personnel, and therefore was "exercising the authority that was vested in him . . . when he discharged the plaintiff." Further, the trial court found that the indemnification policy was enforceable for the judgment entered against defendant Somers in his individual capacity. The trial court acknowledged that the case presented a "challeng[ing]" argument regarding separation of powers, in particular where the chief judge was "personally motivated" to initiate the agreement binding the funding unit. Nevertheless, the trial court determined that defendant Somers was operating within the function of the court when he adopted the indemnification policy.

On December 11, 2014, the trial court entered an order in accordance with its ruling from the bench, granting plaintiff's motion for summary disposition and denying defendant Court's motion for summary disposition. The trial court entered judgment in favor of plaintiff and against defendant Court in the amount of $1,183,330.96. This appeal followed.

## III. STANDARD OF REVIEW

On appeal, a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(10) is reviewed de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). When deciding a motion for summary disposition, a court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence submitted in the light most favorable to the nonmoving party, *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012), and all reasonable inferences are to be drawn in favor of the nonmoving party, *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010). Summary disposition is proper if the evidence fails to establish a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Id*. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds could differ. *Debano-Griffin v Lake Co Bd of Comm'rs*, 493 Mich 167, 175; 828 NW2d 634 (2013).

## IV. SOVEREIGN IMMUNITY

Defendant Court asserts that the trial court erred in granting summary disposition in favor of plaintiff because it cannot be held liable as a garnishee defendant for a judgment entered against defendant Somers in his individual capacity, and it was granted sovereign immunity in the underlying federal lawsuit. We first address defendant Court's sovereign immunity argument because, if immunity attaches, it bars any further action against the court regarding this matter.

Before trial, the Sixth Circuit Court held that defendant Court had Eleventh Amendment immunity from plaintiff's § 1983 civil rights action. *Pucci II*, 628 F3d at 761-764. The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

"Although by its terms the Amendment applies only to suits against a State by citizens of another State, [United States Supreme Court] cases have extended the Amendment's applicability to suits by citizens against their own States." *Bd of Trustees of the Univ of Alabama v Garrett*, 531 US 356, 363; 121 S Ct 955; 148 L Ed 2d 866 (2001). Moreover, the Amendment precludes suits in both federal and state courts. *Alden v Maine*, 527 US 706, 712; 119 S Ct 2240; 144 L Ed 2d 636 (1999); *Ernst v Rising*, 427 F3d 351, 358 (CA 6, 2005).

Defendant Court contends that its sovereign immunity from plaintiff's claims in the underlying federal action includes protection from garnishment proceedings in this lawsuit. We disagree and hold that Eleventh Amendment immunity is inapplicable to the present collection proceeding, which is based on a contractual obligation. The matter before the court in the underlying *Pucci* case was a federal civil rights violation. *Pucci II*, 628 F3d at 755. Here, plaintiff brought a separate action for garnishment based on an indemnification agreement potentially binding defendant Court. The federal district court ruled that the federal court did not have subject matter jurisdiction to determine the indemnification matter and the City of Dearborn's potential responsibility for funding the judgment because the indemnification issue was "a new theory" not part of the previous proceedings. *Somers*, 962 F Supp 2d at 937-939. The district court concluded that "[Plaintiff] must seek her remedies against the state district court and the City of Dearborn under the federal judgment in state court." *Id*. at 933. Therefore, the federal court effectively acknowledged that sovereign immunity did not bar plaintiff's collections suit based on the indemnity agreement.

Moreover, defendant claims that collecting through garnishment is contrary to the purpose of sovereign immunity. Defendant cites *Wilson v Beebe*, 770 F2d 578, 587-588 (CA 6, 1985) for the proposition that sovereign immunity provides protection for governmental units from direct or indirect lawsuits that would impose a liability requiring payment from public funds. However, the *Wilson* Court distinguished between an obligation imposed on the state and an obligation voluntarily assumed by the state. *Id*. at 588. It found that the state, not the individual, was entitled to immunity from liability, and a commitment to indemnify the individual did not "clothe him with this immunity." *Id*. Nevertheless, this did not preclude the state from electing to indemnify the individual. *Id*. at 587.

-4-

Here, defendant Court voluntarily adopted an agreement to indemnify defendant Somers for the judgment against him. This obligation is distinct from any constitutional matter protected under sovereign immunity. As in *Wilson*, there is a difference between legal liability for an action and a voluntarily assumed obligation to indemnify. For the above-stated reasons, we conclude that defendant Court cannot rely on sovereign immunity to avoid its assumed obligation to indemnify defendant Somers for the judgment against him.

## V. INDEMNIFICATION AGREEMENT

Next, we address defendant Court's claim that it cannot be held liable as a garnishee defendant for a judgment entered against defendant Somers in his individual capacity. "The purpose of a garnishment proceeding is to allow a judgment creditor to satisfy her judgment from money, credits, or other property belonging to the judgment debtor that is in the hands of someone else." *Somers*, 962 F Supp 2d at 935. Michigan law recognizes such garnishment proceedings. *Id*. Plaintiff brought the instant action against defendant Court based on the judgment she obtained in federal court against defendant Somers individually under the theory that defendant Court voluntarily assumed the obligation to indemnify defendant Somers for liability arising from the discharge of his duties for the district court.

There is case law to suggest that if the judgment were against a state district court or a judge in an official capacity, a local funding unit, such as the City, would likely be obliged to satisfy the judgment. See *Cameron v Monroe Co Probate Court*, 457 Mich 423, 425; 579 NW2d 859 (1998) (acknowledging that the plaintiffs "received $25,000 from the state of Michigan" in satisfaction of a judgment in their favor against a state probate court); *Anspach v Livonia*, 140 Mich App 403, 410; 364 NW2d 336 (1985) (observing that the local governmental entity "has a statutory duty to pay the cost of financing the [defendant district court], which would include any judgment plaintiff might recover against" the court); *Dolan v Ann Arbor*, 666 F Supp 2d 754, 760-763 (ED Mich, 2009) (concluding it was unclear whether the city would be liable for any judgment the plaintiff might obtain against the Fifteenth District Court). However, as defendant Court contends, the judgment is against defendant Somers in his individual capacity, not his official capacity.

The *Somers* court observed this distinction, explaining that a lawsuit against a public official in his official capacity is merely "another way of pleading an action against an entity of which an officer is an agent." *Somers*, 962 F Supp 2d at 938, quoting *Monell v Dep't of Soc Servs of City of New York*, 436 US 658, 690 n 55; 98 S Ct 2018; 56 L Ed 2d 611 (1978). On the other hand, "[p]ersonal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Somers*, 962 F Supp 2d at 938, quoting *Kentucky v Graham*, 473 US 159, 165; 105 S Ct 3099; 87 L Ed 2d 114 (1985). Accordingly, "an award of damages against an official in his personal capacity can be executed only against the official's personal assets." *Somers*, 962 F Supp 2d at 938, quoting *Kentucky*, 473 US at 166. "The distinction between those two forms of suit suggests that the effects of a judgment against a district court cannot be uncritically mapped onto a judgment against a judge in his personal capacity." *Somers*, 962 F Supp 2d at 938.

Regardless of this variation in the nature of suits against governmental personnel, plaintiff argues that an indemnification policy attaches liability to defendant Court in this case.

As an initial matter, we must look to the language of the policy to determine if defendant Court agreed to be obliged to a judgment entered against a judge in his individual capacity. That policy provides, in relevant part:

> [I]t is the official policy of the 19th District Court that the supervisory personnel identified herein [later defined to include all judges of the Court] shall be indemnified and held harmless for the costs of defending and for any judgment entered against them resulting from any civil action for discretionary administrative decisions made within the scope of his or her authority including decisions regarding the hiring, firing and/or discipline of its employees and the creation, reorganization and/or elimination of personnel positions as they shall deem appropriate to the efficient, economical and necessary functioning of the court.

The policy further provides that if the district court does not have the funds to pay such a judgment, the court would submit the judgment to the City of Dearborn for appropriation of the required funds.

The plain language of the indemnification policy does not distinguish between official and personal capacity judgments. Rather, it establishes an obligation to pay where a judge was discharging administrative duties of the court, including making employment and reorganization decisions. This language coincides with MCR 8.110(C)(3), which provides that the hiring and firing of court personnel is the responsibility of the chief judge of the district court. See also *Pucci II*, 628 F3d at 752. The trial court found this obligation to be present in the instant case, acknowledging the current chief judge's opinion that the court would be responsible where a judge violates an employee's constitutional right within the discharge of the judge's professional duties. Therefore, defendant Court assumed the obligation of paying the judgment against defendant Somers because it was based on an employment decision.

However, as the federal court concluded, there remains a legal question regarding the validity of the policy. *Somers*, 962 F Supp 2d at 938. Defendant Court questions the authority of defendant Somers and his successor chief judge to implement the indemnification policy issued only days before the trial began. According to defendant Court, the legislature, not the judiciary, must initiate all funding policies. Defendant Court cites *46th Circuit Trial Court v Crawford Co*, 476 Mich 131, 141; 719 NW2d 553 (2006), for its holding that "the most fundamental aspect of the 'legislative power' . . . is the power to tax and to appropriate for specified purposes." In *Crawford*, the chief judge of the circuit court sued the court's funding unit to compel funding for an enhanced pension plan that he wanted to adopt for court employees for the purpose of boosting morale. *Id*. at 136-138. According to the Michigan Supreme Court, the judiciary is able to compel appropriations not legislatively allocated in "rare instances" to meet critical needs of the judiciary and circumstances where "the overall operation of the court, or a constitutional function is in jeopardy." *Id*. at 142-143, 147-148, quoting *Employees & Judge of the Second Judicial Dist Court v Hillsdale Co*, 423 Mich 705, 717-719; 378 NW2d 744 (1985). To institute such authority, the court must prove by clear and convincing evidence that the funding is reasonable and necessary. *Crawford*, 476 Mich at 149. The *Crawford* Court refused to find a right to compel funding from the defendants, concluding that the appropriation was not necessary for the court to "function serviceably." *Id*. at 155. A similar conclusion can

be found in *Hillsdale*, 423 Mich at 723, where the Michigan Supreme Court ruled that the chief judge lacked the authority to compel additional funding through administrative order.

Defendant Court asserts that a judge's inherent authority over personnel matters does not grant him the unfettered ability to implement any appropriation he desires for any issue that touches on a personnel decision. In that regard, the Michigan Supreme Court has held, it is "well established" that "in the exercise of its employment responsibilities the judiciary must take into account the limited dollars appropriated to it by the legislative branch in the exercise of the Legislature's own constitutional responsibility.*" Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 302; 586 NW2d 894 (1998).

Plaintiff counters that it was within defendant Somers's authority to issue the indemnification policy because it was an administrative decision. Plaintiff cites MCR 8.110(C) and the State Court Administrative Office's guidelines as permitting defendant Somers's actions in this case. MCR 8.110(C) provides:

> (2) As the presiding officer of the court, a chief judge shall:
>
> * * *
>
> (c) initiate policies concerning the court's internal operations and its position on external matters affecting the court;
>
> * * *
>
> (3) As director of the administration of the court, a chief judge shall have administrative superintending power and control over judges of the court and all court personnel with the authority and responsibility to:
>
> * * *
>
> (d) supervise the performance of all court personnel, with authority to hire, discipline, or discharge such personnel, with the exception of a judge's secretary and law clerk, if any;
>
> * * *
>
> (f) supervise court finances, including financial planning, the preparation and presentation of budgets, and financial reporting;
>
> * * *
>
> (i) perform any act or duty or enter any order necessarily incidental to carrying out the purposes of this rule.

Plaintiff notes that the SCAO guidelines on "Risk Management" provide for liability protection of judges and court employees through attorney representation and liability coverage through insurance or indemnification. Furthermore, although it does not specify who has the authority to

make an indemnification decision, MCL 691.1408 permits a governmental agency to indemnify one of its employees for a judgment entered against that employee "while in the course of employment and while acting within the scope of his or her authority."

In addition, plaintiff cites *Judicial Attorneys Ass'n*, 459 Mich at 299, for the proposition that "the fundamental and ultimate responsibility for all aspects of court administration, including operations and personnel matters within the trial courts, resides within the inherent authority of the judicial branch." This discretion is broad and has been interpreted as granting chief judges the authority "to take measures not prohibited by the letter or spirit of the court rules." *Schell v Baker Furniture Co*, 461 Mich 502, 513; 607 NW2d 358 (2000).

Moreover, in *Cameron*, 457 Mich at 425, employees of the court alleged that the probate court judge discriminated against them and violated their civil rights. A judgment of $25,000 was entered against the probate court. *Id*. The Michigan Supreme Court ruled that a county is obligated to pay such judgments. *Id*. at 428. It held that while "employment discrimination is not an 'expense of justice,'" the "supervision and administration of court personnel is a necessary expense of justice for which the county is expected to pay." *Id*. at 427-428. It is noteworthy that the judgment in *Cameron* was entered against the court, *id*. at 425, while the judgment was entered against the judge personally in the instant case. It is upon this distinction that we believe that this case ultimately turns. While we agree that a Chief Judge can adopt an indemnification policy that covers the court's court employees and judges while acting in their official capacity, we do not believe that this power extends to indemnifying judges for liability incurred in their personal capacity. Therefore, because the judgment in this case is against the judge in his personal capacity, the indemnification policy does not apply and defendant Court is not liable.

Reversed and remanded with instructions to enter summary disposition in favor of defendant Court. We do not retain jurisdiction. Defendant Court may tax costs.

/s/ Henry William Saad
/s/ David H. Sawyer
/s/ Joel P. Hoekstra